THE CHICAGO TITLE AND TRUST COMPANY, Appellant, *vs.* THE NATIONAL STORAGE COMPANY, Appellee.—Same Appellant *vs.* THE FIRST NATIONAL BANK OF CHICAGO, Appellee.—Same Appellant *vs.* HENRY W. ROGERS & BRO. Appellee.

*Opinion filed October 28, 1913—Rehearing denied Dec. 3, 1913.*

1. BANKRUPTCY—*jurisdiction over the bankrupt's property depends upon question of possession.* If property is not in the possession of the bankrupt at the time he files his petition but is in other persons claiming adverse rights therein, the bankruptcy court has no jurisdiction of the property as a part of bankrupt's estate.

2. SAME—*when determination of question of possession operates as an estoppel by verdict.* Where the bankruptcy court, under special pleadings questioning its jurisdiction, must determine the question of possession of the property, and finds that neither the bankrupt nor his trustee has had possession and that the court is therefore without jurisdiction, the finding as to possession may be relied upon as an estoppel by verdict in a suit between the same parties in another court, notwithstanding the bankruptcy court dismissed the petition without prejudice to the right of the trustee to litigate in a proper court.

3. SAME—*a trustee in bankruptcy has no greater rights than the bankrupt.* A trustee in bankruptcy stands in the shoes of the bankrupt and has no better title to the property of the bankrupt than the latter had at the time of the filing of the petition, and he does not occupy the position of an innocent third person having a judgment or other lien against the bankrupt's property.

4. SAME—*when substitution of property for that pledged does not destroy the lien of warehouse receipts.* Where, at the time a bankruptcy petition was filed, warehouse receipts for certain quantities of timothy seed, placed in storage by the bankrupt, were in the hands of purchasers for value, the lien of such receipts, as against the bankrupt, the trustee and general or unsecured creditors, is not lost by the fact that there has been an unauthorized substitution of other seed of like quality and quantity for that upon which the receipts were issued.

5. ESTOPPEL BY VERDICT—*doctrine applies to a fact determined by court in deciding question of its own jurisdiction.* The doctrine of estoppel by verdict applies to questions arising upon an

issue of fact as to the jurisdiction of the court as fully as to questions arising upon the trial of a cause upon its merits, and is not affected by the circumstance that the court may ultimately determine that it has no jurisdiction to proceed further.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

NEWTON WYETH, for appellant.

ORVILLE PECKHAM, EDWARD EAGLE BROWN, and JOHN N. OTT, for appellee the First National Bank of Chicago.

CARNAHAN, ELSDON & SLUSSER, for the other appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The Chicago Title and Trust Company, as trustee in bankruptcy of Alexander Rodgers, brought separate actions of assumpsit against the National Storage Company, the First National Bank of Chicago and H. W. Rogers & Bro. to recover the proceeds from the sale of certain seed, based on the theory that the seed in question was a part of the estate of the bankrupt and had been sold and the proceeds wrongfully retained by the defendants. The cases were consolidated for trial before the court without a jury, and being so tried, judgments were rendered in favor of the defendants below. The trustee prosecuted an appeal to the Appellate Court for the First District, where the judgments below were affirmed. The trustee having obtained a certificate of importance, the cases have been removed to this court, where they have been consolidated and taken for decision as one case.

The declarations contain special counts, which allege that Alexander Rodgers, a seed merchant, became a bankrupt and that the plaintiff was appointed trustee of his

estate by the United States district court sitting in bankruptcy; that as such trustee the plaintiff received certain seed from the bankrupt, who was in the lawful and exclusive possession thereof when the petition in bankruptcy was filed, and that the defendants afterwards, without the consent of plaintiff, took possession of said seed and sold it and kept the proceeds; that the plaintiff has demanded said proceeds of the defendants and they have not been paid over. There were also counts added for money had and received to the use of plaintiff. The declarations in two of the cases had special counts alleging that the bankrupt had given a preference to those defendants, and that the defendants had cause to believe that a preference contrary to the provisions of the Bankruptcy law was intended. The real controversy is between the general creditors of Alexander Rodgers, the bankrupt, and appellees, who are also creditors of the bankrupt but who claim the right to have their respective debts paid in full out of the proceeds of the seed which has been converted into money.

The controversy arises out of the following facts: Alexander Rodgers was a seed merchant and had a place of business known as Nos. 220-230 Johnson street, Chicago. The National Storage Company is a corporation organized under the statute as a warehouse and storage company, and is authorized to issue warehouse receipts upon products stored with it. The National Storage Company leased for a nominal sum the premises occupied by the bankrupt and caused its sign to be displayed at his place of business. Rodgers had a contract with the storage company, by which, when he purchased or received products and stored the same in the demised premises, he could apply to the storage company and obtain a warehouse receipt, which was assignable by endorsement as any other authorized warehouse receipt, under the statute. A large quantity of timothy seed was purchased by Rodgers and stored at the premises leased to the storage company, and upon his application warehouse

receipts were issued by the storage company to him, which receipts he assigned to the First National Bank as collateral security for certain loans made to him by said bank. Other receipts were assigned to H. W. Rogers & Bro. for the purpose of securing them for a loan of $5000. The First National Bank and Rogers & Bro. held these warehouse receipts on May 8, 1901, when Rodgers filed his petition in bankruptcy in the District Court of the United States for the Northern District of Illinois. On May 10 Rodgers was adjudged a bankrupt and the appellant was soon after appointed trustee. On May 13, 1901, the appellant filed its petition in the district court reciting the proceedings in bankruptcy and alleging that it had taken possession of the property and assets of the bankrupt, consisting of seed, at his premises, Nos. 220-230 Johnson street, Chicago, and prayed for an order authorizing the sale of the seed. The bank and Rogers & Bro. appeared specially for the purpose of questioning the jurisdiction of the district court to enter an order for the sale of said seed, and set up their indebtedness and the assignment of the warehouse receipts issued upon said seed as a basis of their adverse claims, and denied that the receiver had ever been in the possession of said goods but alleged that the same had been in the exclusive possession and control of the storage company, and prayed that the petition of the receiver be dismissed. The storage company also filed a like special appearance and questioned the jurisdiction of the district court on the same grounds relied on by the bank and Rogers & Bro., and alleged that it was a legally authorized warehouseman of the State of Illinois of class "C," and that it had received the seed and issued its receipt therefor, and that said seed was, and had been, in its possession and control. It thus appears that the question whether the bankrupt was in the actual possession of the seed at the time of the bankruptcy proceedings was directly raised in the district court. On the issue thus made upon the jurisdictional fact of possession

the bankruptcy court heard evidence, and entered a decree finding that the trustee in bankruptcy did not have the right of possession of said property, and that when the petition in bankruptcy was filed the seed in question was in the actual possession of the National Storage Company.

While this proceeding was pending in the bankruptcy court all parties in interest stipulated that the seed might be sold and the proceeds held by the First National Bank to abide the final disposition of the cause. Under this arrangement the five lots of seed claimed by Rogers & Bro. were sold for $7230.43 and the seed claimed by the First National Bank was sold for the net amount of $15,773.41. The amount for which the seed was sold being in excess of the aggregate amount of the debts due the bank and Rogers & Bro., $5000 was paid over by the bank to the trustee. The bankruptcy court, after finding that it had no jurisdiction, nevertheless retained the cause and entered an order adjudging that the First National Bank was entitled to be paid out of the fund arising from the sale of the seed the full amount of its claim, ($9854.15,) with interest, and that Rogers & Bro. were entitled to be paid $5000, with interest, and that the storage company was entitled to $14.99 for storage charges due at the time the petition in bankruptcy was filed, and made an order directing the bank to pay out the proceeds remaining in its hands, and that the trustee pay certain costs, including $212.50 for printing testimony, which had been paid by the storage company. From this decree the trustee and James A. Patton, one of the general creditors of the bankrupt, appealed to the circuit court of appeals for the seventh circuit. The circuit court of appeals reviewed the facts and reached the conclusion that the finding of the district court upon the question of possession was contrary to the weight of the evidence, and thereupon the decree was reversed and the cause remanded to the district court, with directions to that court to enter a decree in favor of the trustee. The opinion of

the circuit court of appeals is reported in 125 Fed. Rep. 169. The case was then removed to the United States Supreme Court by *certiorari,* and there the judgment of the circuit court of appeals was reversed on the ground that, the proceeding being one in bankruptcy, no right of appeal existed, and that the jurisdiction of the circuit court of appeals was confined, under section 24 of the Bankruptcy act, to a revision of the judgment of the district court in matters of law, only, on notice and petition. The Supreme Court of the United States held that the district court had no jurisdiction to pronounce judgment in the proceeding after having determined the facts upon which its jurisdiction depended adversely thereto, and that the only decree which the district court could properly render was to order the money returned to the claimants, without prejudice to the right of the trustee to litigate in a proper court. It was held that the situation was not changed by the fact that the property had been converted into money by consent of parties, and that the money which represented the property was subject to the order of the court, the same as the property would have been had it not been sold. The net result of the decision by the United States Supreme Court was that the circuit court of appeals had no jurisdiction, and its judgment was reversed and the cause remanded to that court, with directions to dismiss the appeal and remand the cause to the district court. The concluding sentence of the opinion of the United States Supreme Court is as follows: "In our view the district court should have declined, upon its findings, to retain jurisdiction, and in that event the decrees for the return of the money should have been without prejudice to the right of respondents to litigate in a proper court, which modifications we direct to be made." (See *First Nat. Bank* v. *Chicago Title and Trust Co.* 198 U. S. 280.) Thereupon the district court made a decree, "without prejudice to the rights of the Chicago Title and Trust Company, the trustee herein, if this court shall so

authorize, to litigate in any proper court the question of the right of said trustee to recover said funds as a part of the bankrupt's general estate." The trustee was not satisfied with the order entered by the district court, and especially complained because of the insertion of the words, "if this court shall so authorize." The trustee then applied to the United States Supreme Court for leave to file a petition for *mandamus* against the district judge, requiring him to modify the decree so as to make it conform to its construction of the remanding order of the United States Supreme Court. Leave to file this petition was denied. (*In re First Nat. Bank,* 200 U. S. 613.) The trustee then made an application to the circuit court of appeals for a writ of *mandamus,* and the writ was granted. (*In re First Nat. Bank,* 146 Fed. Rep. 742.) The circuit court of appeals awarded the writ, and the district judge thereupon entered a modified decree conforming to the mandate of the circuit court of appeals. The *mandamus* proceeding was removed to the United States Supreme Court, and that court reversed the circuit court of appeals. The judgment of the circuit court of appeals having been acted upon by the district court, it became necessary for the Supreme Court to determine which of the two decrees was the proper one to enter, and that court held that the first decree entered by the district court complied with the direction of the Supreme Court, and that the subsequent decree having been entered in obedience to an unwarranted judgment should be set aside. (*Ex parte First Nat. Bank,* 207 U. S. 61.) In concluding its opinion in the case above cited, the court, speaking by Mr. Justice Holmes, said: "We need not determine whether the language quoted from our former opinion was improvidently used. It is enough to say that the opinion did not purport to influence the words of the new decree. It merely gave a general direction, which was to be carried out in a form to be settled by the district court. It declared, perhaps unnecessarily, that the decree was to be

without prejudice to whatever right the respondents might have to litigate in a proper court,—not that they were entitled to litigate, or that the authority given by the Bankruptcy law to the district court to control such litigation was superseded."

The suits now before this court were commenced after the termination of all the litigation in the Federal courts. We have deemed it necessary to set out the history of the litigation between the parties in the Federal courts in order to determine whether the plea setting up the judgment of the district court as an estoppel by verdict in respect to the possession of the property in controversy presents any defense to these actions in the State court. Under those counts of appellant's declaration which allege that the bankrupt was in the possession of the seed at the time the petition in bankruptcy was filed, the question of such possession was an indispensable element in the case. The trial court held that under the pleadings it must be taken as conclusively proven that neither appellant nor the bankrupt was in the possession of the seed in question at the time of the bankruptcy, and all evidence tending to prove such possession was excluded as irrelevant, incompetent and immaterial. When the jurisdiction of the bankruptcy court was invoked by appellant and the court was asked to deal with the property in controversy as a part of the estate of the bankrupt, its power to do so was challenged by appellees on the sole ground that the bankrupt was not in possession of the property at the time of bankruptcy, and that there was therefore a total want of jurisdiction in the court over this property. The jurisdiction of the bankruptcy court to deal with the property in question depended upon whether the actual possession of the seed was in the bankrupt at the time he filed his petition in bankruptcy. If the property was not in the possession of the bankrupt at the time he filed his petition but was in other persons claiming adverse rights thereto, then the bankruptcy court had no

jurisdiction over the property involved, as a part of the bankrupt estate. (*First Nat. Bank* v. *Chicago Title and Trust Co. supra;* Bankruptcy act, clause *b,* sec. 23.) The district court was thus presented with a question as to its own jurisdiction, the decision of which depended upon a controverted question of fact. That question was tried by the only tribunal that could try it. Notwithstanding the determination of the district court against its jurisdiction to retain the cause, still that court had jurisdiction for the purpose of determining all preliminary matters upon which its jurisdiction of the whole controversy depended.

There is a well defined distinction between a former judgment when it is relied on under a plea of *res judicata,* and when it is pleaded by way of an estoppel by verdict upon some matter of fact which has been previously determined. In the former case it is necessary to support the defense that there should be an identity of parties and an identity of the cause of action with the one in which the defense is interposed. Such plea, in effect, says that the plaintiff has on a previous occasion brought an action against the defendant, or against one under whom the defendant claims, for the very same cause of action now alleged, in which said former action a judgment was given for the plaintiff or for the defendant, as may have been the case. (Bigelow on Estoppel, p. 27.) An estoppel by verdict is but another branch of the doctrine of *res judicata,* and it rests upon the same principle of law,—that is, that a matter once litigated between parties to a final judgment in a court of competent jurisdiction cannot again be controverted. When this doctrine is applied to a single question or point arising in the course of litigation which has finally been adjudicated it is designated as an estoppel by verdict, and the same question or point cannot again be litigated between the same parties in the same or any other court at law or in chancery, and neither party, nor their privies, will be permitted to allege anything inconsistent

with the finding upon that question. *Hanna* v. *Read,* 102 Ill. 596; *Wright* v. *Griffey,* 147 id. 496; *Markley* v. *People,* 171 id. 260; *People* v. *Hill,* 182 id. 425; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 247 id. 340.

The rule established by the above and other authorities ·is conceded, but it is contended that the district court having determined that it had no jurisdiction of the subject matter, its determination of any fact upon which that conclusion was based cannot be an estoppel by verdict in respect to such fact. We cannot assent to this view. The United States district court had the parties to this litigation before it and an issue as to its jurisdiction was joined, the determination of which required that court to try the question of possession. If the unreversed judgment of the district court upon the jurisdictional question was a nullity and operated merely as an involuntary non-suit, appellant could have immediately instituted the same suit in the same or some other court, and this procedure might have gone on indefinitely or until some court was found that would decide the question the other way. The doctrine of estoppel by verdict applies to questions arising upon an issue as to the jurisdiction of the court as fully and completely as to questions arising upon the trial of a cause upon its merits, and is not affected by the circumstance that the court may ultimately determine that it can go no farther. This precise question was decided by the United States Supreme Court in *First Nat. Bank* v. *Chicago Title and Trust Co. supra,* and by this court in *Hill Co.* v. *Contractors' Supply Co.* 249 Ill. 304, contrary to the contention of appellant. In our opinion there is no basis for the distinction which the appellant seeks to make, and that the general rule applicable to estoppels by verdict applies where jurisdiction depends upon issuable facts, and where there is an adjudication of such facts the averment of their existence cannot be contradicted and the judgment of the court must be regarded as conclusive. Brown on Jurisdiction, sec. 19*a;* see, also, *Ryan* v.

*Barga,* 37 Iowa, 80; *Northern Bank* v. *Porter Township,* 110 U. S. 615.

But it is said that the judgment of the United States district court was a dismissal of the petition without prejudice to the trustee to proceed in any other court, and that for this reason its judgment cannot operate as an estoppel. In our opinion the words incorporated in the decree of the district court, "without prejudice," etc., have no legal force or effect. The district court having determined that it had no jurisdiction of the property in question it was powerless to go beyond that question. The decree of that court in regard to the distribution of the fund between the bank and Rogers & Bro. was clearly a matter with which that court had no concern, and the same may be said with reference to the order dismissing without prejudice. Whatever else these words may mean, they certainly do not mean that the court had thereby nullified its finding upon the jurisdictional question. When the case was before the United States Supreme Court the second time, referring to the direction that had been given in its previous opinion, the court said: "It [the opinion] declared, perhaps unnecessarily, that the decree was to be without prejudice to whatever right the respondents might have to litigate in a proper court,—not that they were entitled to litigate," etc. As we construe this language, it means that the Supreme Court, upon its second and more mature consideration, attached no importance to the particular phraseology of the direction that had previously been given.

If, as we have sought to show, it has been authoritatively adjudicated that the possession of the property in controversy was in the National Storage Company at the time of bankruptcy, it necessarily follows that appellant can not recover under those counts of its declaration which are based on the theory that the bankrupt was in possession and that the trustee succeeded to that possession by the act of bankruptcy.

The only remaining question is whether any right to recover exists under the common counts. The evidence shows that after the warehouse receipts were issued, the seed upon which they were based was sold and removed by Alexander Rodgers and other seed of like quantity and quality substituted, so that, in point of fact, at the time of bankruptcy the identical seed was not in the warehouse that was there when the warehouse receipts were issued. Appellant contends that any lien or right which the bank and Rogers & Bro. may have had by virtue of the warehouse receipts was lost when other seed was substituted for the seed upon which the receipts were based. This contention would have more force in it if it were being presented on behalf of some innocent third person who had a judgment or other lien against the bankrupt's property, but the transaction is being attacked in the case at bar by the trustee in bankruptcy, who stands in the shoes of the bankrupt and has no better title than the bankrupt himself had at the time of bankruptcy. He is in no sense an innocent third party, and is in no better position to take advantage of the substitution of one lot of seed for another than Alexander Rodgers would have been. (Bankruptcy act, sec. 70a; *Hewitt* v. *Berlin Machine Works,* 194 U. S. 296; *Thomas* v. *Taggart,* 209 id. 385; *Union Trust Co.* v. *Trumbull,* 137 Ill. 146; *Hoffman* v. *Schoyer,* 143 id. 598; *Barchard* v. *Kohn,* 157 id. 579.) The issuing of the warehouse receipts and the delivery of the property to the warehouseman were a valid pledge of the seed as security to anyone into whose hands such receipts might pass for value, and while such liens are not valid as to *bona fide* purchasers, encumbrancers and creditors armed with process, they are valid between the parties and as to general or unsecured creditors. (*Huschle* v. *Morris,* 131 Ill. 587; *Deering & Co.* v. *Washburn,* 141 id. 153; *Union Trust Co.* v. *Trumbull, supra; Thompson* v. *Fairbanks,* 196 U. S. 516.) The *bona fides* of appellees cannot be questioned. Both the bank and Rogers & Bro.

loaned the bankrupt money and took these warehouse receipts as collateral security. As between them and the bankrupt, or his trustee, who stands in his stead, they have superior equities to this fund.

Our conclusion upon the whole case is, that the decree of the district court finding that neither the bankrupt nor his trustee had either the possession or the right to possession of the property in controversy at the time of bankruptcy was a final and authoritative adjudication by the bankruptcy court and that its decree operates as an estoppel by verdict against appellant upon the questions thus adjudicated, and that since the trustee only succeeds to such rights and equities as the bankrupt had in the funds, appellees, who in good faith loaned money on the warehouse receipts, can not be defeated because of an unauthorized substitution of other property instead of that upon the pledge of which the credit was given.

The judgments of the trial and Appellate Courts were in accordance with these views, and they must therefore be affirmed.                                        *Judgments affirmed.*